1  ROBERT C. SCHUBERT (S.B.N. 62684)
2  (rschubert@sjk.law)
   AMBER L. SCHUBERT (S.B.N. 278696)
3  (aschubert@sjk.law)
   DANIEL L.M. PULGRAM (S.B.N. 354569)
4  (dpulgram@sjk.law)
   **SCHUBERT JONCKHEER & KOLBE LLP**
5  2001 Union Street, Suite 200
   San Francisco, California 94123
6  Telephone:     (415) 788-4220
   Facsimile:     (415) 788-0161
7
8  *Counsel for Plaintiff Darryl Scott*

9

10              UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12           SAN FRANCISCO / OAKLAND DIVISION

13

14  DARRYL SCOTT, Individually and on behalf
    of all others similarly situated,

15          *Plaintiff,*
                                            No.
16  v.
                                            **CLASS ACTION COMPLAINT**
17  HEALTHCARE MANAGEMENT
    SOLUTIONS, LLC, and ASRC FEDERAL       JURY TRIAL DEMANDED
18  DATA SOLUTIONS, LLC,

19          *Defendants*.

20

21

22       Plaintiff Darryl Scott ("Plaintiff"), on behalf of himself and all others similarly situated

23  alleges the following complaint against Defendants Healthcare Management Solutions, LLC

24  ("HMS") and ASRC Federal Data Solutions, LLC ("ASRC") (collectively "Defendants") upon

25  personal knowledge as to his own acts, and based upon his investigation, his counsel's

26  investigation, and information and belief as to all other matters.

27

28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

1

**SUMMARY OF ACTION**

2   1.      This case involves a major data breach involving extremely private personally

3   identifiable information ("PII") and protected health information ("PHI") for hundreds of thousands

4   of Medicare beneficiaries. Defendants are private contractors who failed in their duties not only to

5   the Government and the Centers for Medicare & Medicaid Services ("CMS"),[1] but also to the

6   hundreds of thousands of vulnerable Medicare beneficiaries who entrusted them with keeping their

7   data secure. As a result, these Medicare recipients, including Plaintiff, have been directly harmed.

8   2.      Defendant ASRC Federal Data Solutions, LLC is the government services

9   subsidiary of the Artic Slope Regional Corporation. It provides "a broad range of services and

10  technical expertise to federal government agencies – with operations spanning 44 states, districts,

11  and territories" including over 8,000 employees.[2]

12  3.      Healthcare Management Solutions, LLC is a subcontractor for ASRC.[3] HMS

13  operates in all 50 states and offers what it calls a "unique blend" of healthcare and technology

14  services.[4] It specifically advertises its services as protecting "vulnerable people." *Id.*

15  4.      Prior to the data breach, ASRC contracted CMS in part to resolve system errors

16  related to Medicare beneficiary entitlement and premium payment records, as well as supporting

17  the collection of Medicare premiums from the direct paying beneficiary population.[5]

18  5.      ASRC subsequently subcontracted some or all of these duties in whole or in part to

19  HMS. The duties subcontracted to HMS included but were not limited to handling CMS data as

20  part of processing Medicare eligibility and entitlement records and processing premium payments.

21  *Id.*

22

23

---

24  [1] CMS repeatedly reported that "initial information indicates that HMS acted in violation of its obligations to CMS." *See* https://www.cms.gov/newsroom/press-releases/cms-responding-data-

25  breach-subcontractor (Last Accessed July 25, 2024)
    [2] https://www.asrcfederal.com/about-us/ (Last Accessed July 25, 2024)

26  [3] https://www.cms.gov/newsroom/press-releases/cms-responding-data-breach-subcontractor (Last Accessed July 25, 2024)

27  [4] https://hcmsllc.com/ (Last Accessed July 25, 2024)

28  [5] https://www.cms.gov/newsroom/press-releases/cms-responding-data-breach-subcontractor (Last Accessed July 25, 2024)

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

6. On or before October 8, 2022, HMS was subject to a ransomware attack on its corporate network. Although HMS provided some notice of the data breach to CMS on October 9, 2022, no notice was given to impacted Medicare Beneficiaries until far later, with the notices starting to be distributed only as late as December 14, 2022, more than 2 months later, by CMS.

7. Initial reports indicated the ransomware attack impacted more than 500,000 individuals.[1] However, subsequent statements issued by CMS indicated that approximately 254,000 patients' information was compromised.

8. As will be discussed in detail later, the compromised information included extremely sensitive information which criminals could use, and did use in the case of Plaintiff Scott, to commit fraud and identity theft crimes.

9. Members of the plaintiff class suffered harm in the loss of their private medical and personal information and the extraordinary risk of sale of this data to criminals over the dark web. Indeed, after the data breach, Plaintiff Scott has been the victim of numerous and ongoing attempts at identity theft and fraud using the personal information lost in the breach. Additionally, even members of the class who have not yet been victims of identity theft and fraud suffer from significant stress and anxiety about the potential for future harm and have to expend significant time and effort to engage in various services and efforts in the wake of the data breach, including but not limited to examining whether their PII or PHI has been sold on the dark web, taking measures to protect against identity theft crimes, expenses, and/or time spent on credit monitoring and identity theft insurance, time spent examining bank statements, time spent initiating fraud alerts, and other consequential harms. Indeed, as HMS repeatedly states on its website, it primarily serves a highly vulnerable population[2] who are especially at risk of victimhood and lack many of the assets enjoyed by more privileged individuals.

10. Plaintiff, individually and on behalf of a nationwide class, alleges claims of (1) Negligence and Negligence *Per Se,* (2) Breach of Implied Contract, (3) Breach of Fiduciary Duty,

---

[1] https://www.idstrong.com/sentinel/healthcare-management-solutions-data-breach/ (Last Accessed July 25, 2024)

[2] https://hcmsllc.com (Last Accessed July 24, 2024)

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

1  and (4) Invasion of Privacy. Plaintiff also alleges claims on behalf of a California subclass under

2  California law for (5) violation of California's Consumer Privacy Act (Cal. Civ. Code §§ 1798.100,

3  *et seq.*), (6) violation of California's Customer Records Act (Cal. Civ. Code §§ 1798.80, *et seq.*),

4  and (7) violation of California's Unfair Competition Law (Cal. Civ. Code §§ 17200, *et seq.*), and

5  (8) seeks declaratory and injunctive relief.  Plaintiff asks the Court to compel Defendants to adopt

6  reasonable information security practices to secure the sensitive PII and PHI that Defendants collect

7  and store in their databases and to grant such other relief as the Court deems just and proper.

## PARTIES

*Plaintiff*

11.  Plaintiff Darryl Scott is a resident and citizen of Oakland, California. Plaintiff is a

Medicare beneficiary. In connection with obtaining Medicare benefits, he entrusted Defendants

with sensitive PII and PHI. For approximately the past year, Plaintiff Scott has been targeted by

pervasive and ongoing identity theft crimes, the most common of which are fraudulent short-term

loans that were made using personal information compromised by the data breach.

*Defendants*

12.  Defendant HMS is headquartered in West Virginia but conducts substantial business

in all 50 states. It is a subcontractor for ASRC Federal and works on processing Medicare eligibility

and entitlement records and premium payments as it relates to CMS.

13.  Defendant ASRC Federal obtained the original Medicare processing contract

discussed above and subsequently subcontracted to HMS to handle all or part of the contract.

Defendant ASRC is responsible for the actions of its subcontractor HMS through *respondeat*

*superior* and joint and several liability. Its operations span 44 states including a significant presence

in California. ASRC Federal has multiple branches including several dedicated to military contracts

and cybersecurity. It is well-aware of the risk of data breaches and proper security protocol.

## JURISDICTION AND VENUE

14.  This Court has subject matter jurisdiction and diversity jurisdiction over this action

under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds

$5 million, exclusive of interest and costs. The class contains more than 100 members (indeed,

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

more than 250,000 members), and many of these members have citizenship diverse from Defendants. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the case in controversy.

15.    The exercise of personal jurisdiction over Defendants is appropriate. Defendants ASRC and HMS are both registered to do business with the California Secretary of State and conduct substantial business in California. Defendant ASRC also employs many people in California.[1]

16.    Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because Plaintiff resides in this district, both HMS and ARSC conduct substantial business in the District, and Plaintiff was harmed within this District.

17.    Divisional Assignment: This action arises in Alameda County, in that a substantial part of the events that give rise to the claims asserted herein occurred in Alameda County, where Plaintiffs resides and where Plaintiff was harmed. Pursuant to L.R. 3-2(d), all civil actions that arise in Alameda County shall be assigned to the San Francisco or Oakland Division.

## **FACTUAL ALLEGATIONS**

**I.    Background:**

18.    Plaintiff and members of the Plaintiff Class are former or current Medicare beneficiaries who used Defendants' services.

19.    In order to receive treatment, Plaintiff and members of the Plaintiff class were required to provide all or part of the following non-exclusive list of sensitive PHI and PII to CMS as a prerequisite to obtaining Medicare benefits:

- Full name and mailing or personal address,
- State and/or Federal Identification,
- Social Security Number,
- Health insurance information including but not limited to carrier, policy number, and healthcare card (if applicable)
- Date of birth,

---

[1] https://www.asrcfederal.com/careers/#open (Last Accessed July 25, 2024)

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

- Medical information including but not limited to information about diagnosis and treatment, personal medical history, family medical history, mental health information, information related to STDs and treatment, medication information, and medical record number,

- Information about physicians and related medical professionals who had been involved in previous or ongoing treatment of the patient,

- Residence and travel history,

- Billing and claims information.

- Banking information including routing and account numbers.

- Medicare/Medicaid information including the Medicare beneficiary identifier, Medicare Card, and Medicare Entitlement, Enrollment, and Premium Information.

- Information on prescriptions taken including history of taking certain prescriptions.

- Diagnostic results and treatment information.

- Information on family members including but not limited to emergency contact information and next of kin.

- Personal email addresses and phone numbers.

- Workers' comp and employment related information.

20. The above information is extremely sensitive personal identifying information and personal health information (PII and PHI). This information is extremely valuable to criminals because it can be used to commit serious identity theft and medical identity theft crimes.

21. Defendants understand the high value of this information and the comparative vulnerability of the population they serve. Indeed, HMS makes "Protect[ing] vulnerable people" its primary selling point on its website, which states, among other things:

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

22.     HMS understood it was safeguarding healthcare information from vulnerable people in every U.S. State and territory using their "technology capabilities." HMS knew or should have known that they would be an exceptionally high value target for cyber-criminals.

23.     The aggregate PII and PHI information from millions of patients (CMS serves over 64 million beneficiaries)[2] is extremely sensitive and is ideal for committing all manner of identity theft, fraud, and associated crimes. This combination of PII and PHI with significant other information—including information purchased from data brokers and social media websites, information on purchasing preferences, employment, and effective advertisements, and government records—is extremely personal and extremely valuable.

24.     As a condition of obtaining Medicare benefits and utilizing Defendants' services, class members entrusted Defendants with this information with the explicit and implicit understanding that the information would be kept secure and that reasonable measures would be taken to maintain and ensure their security, including notification in the event of a breach, commensurate with the value of the data. ASRC and HMS likewise made similar representations to CMS of their obligations to protect and secure the data.

## II.     The Breach

25.     At least as early as October 8, 2022, HMS became aware of a serious data breach and ransomware attack on its corporate network. This breach impacted approximately 254,000

---

[1] https://hcmsllc.com/ (Last Accessed July 25, 2024)

[2] https://www.cms.gov/newsroom/press-releases/cms-responding-data-breach-subcontractor (Last Accessed July 25, 2024)

Medicare beneficiaries[1] and resulted in the exposure of substantial personally identifiable information and protected health information. According to CMS "initial information indicates that HMS acted in violation of its obligations to CMS."[2]

26.    The sensitivity and scope of the compromised information is extraordinary. The beneficiary information which was compromised includes but is not limited to:

- Full name of the beneficiary

- Address

- Date of Birth

- Phone Number

- Full Social Security Number

- Medicare Beneficiary Identifier

- Banking Information, including routing and account numbers

- Medicare Entitlement, Enrollment, and Premium Information.

27.    This information is extraordinarily sensitive and would be ideal for a criminal agent attempting to commit identity theft or similar crimes against innocent Medicare beneficiaries. Indeed, CMS ultimately classified the breach as a "major incident" as defined by the Federal Information Security Modernization Act ("FISMA"). However, no notifications were mailed to the impacted beneficiaries until December 14, 2022, more than two months after the data breach had occurred. This "major incident" was significant enough to prompt a congressional investigation.[3]

28.    No healthcare technology services provider, let alone one entrusted by state and federal governments to administer critical benefits and services to a vulnerable population across all 50 states, should have had so much data accessible in a single place about so many individuals. It is common practice for sensitive servers and systems to be compartmentalized so that even if an individual system is breached, the breach will not compromise the entire enterprise and damage

---

[1] Initial reports indicated the data breach impacted at least 500,000 people; before the number was later reduced to 254,000 in subsequent press releases.

[2] https://www.cms.gov/newsroom/press-releases/cms-responding-data-breach-subcontractor (Last Accessed July 25, 2024)

[3] https://oversight.house.gov/wp-content/uploads/2023/03/CMS-Data-Breach-Letter-FINAL.pdf (Last Accessed July 25, 2024)

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

will be mitigated. The fact that name, address, date of birth, phone number, Social Security number, banking information including routing and account numbers, and Medicare beneficiary identifier, entitlement, enrollment, and premium information were all stored in the same place and could be accessed for hundreds of thousands of beneficiaries suggests the existence of a fundamental security flaw and a failure to compartmentalize information and appropriately restrict access to only those with a "need to know."

29.    As a direct result of Defendants' negligence and failure to follow standard security practices, including its failure to follow its "obligations to CMS"[1] hundreds of thousands of vulnerable people had some of their most precious and immutable personal information, including their Social Security numbers, dates of birth, and detailed banking information, placed into the hands of criminal actors. As will be discussed in more detail later, these vulnerable beneficiaries will be at risk of identity theft and related serious crimes for their entire lives, and indeed, as in the case of Plaintiff Scott, have been already victimized.

**III.    Defendants' Privacy Representations**

30.    Defendant HMS repeatedly represents on its website that it understands it is servicing a vulnerable population for vital healthcare and technology services.[2]  For example, it discusses how its work is focused on "the vulnerable people who are counting on us", and relays how HMS brings "accountable oversight," "Healthcare quality assurance, and state and federal healthcare regulatory compliance," and "proven expertise … in both healthcare and technology to each engagement." *Id.* Given the vulnerability of the population HMS serves, its representations about compliance with state and federal law standards, and its representations about expertise and high-quality service, HMS is plainly representing they will provide high quality security to the valuable information entrusted to them by Medicare beneficiaries.

31.    ASRC Federal likewise represents its expertise in IT security related to healthcare. For example, ASRC make the following representation on its website:

---

[1] https://www.cms.gov/newsroom/press-releases/cms-responding-data-breach-subcontractor
[2] https://hcmsllc.com/who-we-are/ (Last Accessed July 25, 2024)

Everyday our analysts, IT professionals and team of healthcare experts provide transformative services to federal health agencies, including the … Centers for Medicare & Medicaid Services (CMS), to modernize legacy systems, improve the security and integrity of the nation's most critical health data, support cutting edge clinical research, and solve enrollment and premium payment issues for Medicare beneficiaries.

32.    Defendant ASRC specifically represents that its work includes "improv[ing] the security and integrity of the nation's most critical health data" as well as solving enrollment and premium payment issues for Medicare beneficiaries. It is inarguable that ASRC understands the high value of the nations "most critical health data" and their representations about their commitment to the security and integrity of their systems are likewise unambiguous. Especially given ASRC's military connections, they should be well-versed in cyber security matters (and the critical importance of basic security measures) given the sensitivity of the data they were entrusted with.

33.    Despite Defendants' representations about the high quality of their security measures, compliance with state and federal guidelines, and statements demonstrating they understood the value of the data they protected, they nevertheless did not comply with reasonable cybersecurity standards that would have prevented, or heavily mitigated, the data breach.

**IV.    Defendants Failed to Comply with Reasonable Cybersecurity Standards**

34.    At all times relevant to this Complaint, Defendants knew or should have known the significance and necessity of safeguarding patients' PII and PHI, and the foreseeable consequences of a data breach. Defendants knew or should have known that because they collected and maintained the PII and PHI for a significant number of beneficiaries, a significant number of beneficiaries would be harmed by a breach of their systems. Defendants further knew due to the nature of its business practices as fully integrated healthcare and technology services companies serving a vulnerable population, that a data breach could potentially result in the release of deeply personal, sensitive, and costly information about beneficiaries.

35.    Because PII is so sensitive and cyberattacks have become a rising threat, the FTC has issued numerous guides for businesses holding sensitive PII and emphasized the importance of adequate data security practices. The FTC also stresses that appropriately safeguarding PII held by

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

businesses should be factored into all business-related decision making. Given HMS and ASRC's repeated representations about compliance with state and federal guidelines, Defendants should have been very well-aware of the FTC standards for safeguarding this sensitive information.

36.    An FTC Publication titled "Protecting Personal Information: A Guide for Business" lays out fundamental data security principles and standard practices that businesses should implement to protect PII.[1] The guidelines highlight that businesses should (a) protect the personal patient information they collect and store; (b) properly dispose of personal information that is no longer needed; (c) encrypt information stored on their computer networks; (d) understand their network's vulnerabilities; and (e) implement policies to correct security problems.

37.    The FTC also recommends businesses use an intrusion detection system, monitor all incoming traffic to the networks for unusual activity, monitor for large amounts of data being transmitted from their systems, and have a response plan prepared in the event of a breach.

38.    The FTC also recommends that businesses limit access to sensitive PII, require complex passwords to be used on the networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.

39.    Businesses that do not comply with the basic protection of sensitive PII are facing enforcement actions brought by the FTC. Failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data is an unfair act or practice prohibited pursuant to Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

40.    Many states' unfair and deceptive trade practices statutes are similar to the FTC Act, and many states adopt the FTC's interpretations of what constitutes an unfair or deceptive trade practice.

41.    Defendants knew or should have known of its obligation to implement appropriate measures to protect its patients' PII but failed to comply with the FTC's basic guidelines and other

---

[1] https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business. (last accessed July 25, 2024)

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

industry best practices, including the minimum standards set by the National Institute of Standards and Technology Cybersecurity Framework Version 1.1.[1]

42.    Defendants' failure to employ reasonable measures to adequately safeguard against unauthorized access to PII constitutes an unfair act or practice as prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45, as well as by state statutory analogs.

43.    HMS was also subject to HIPAA security, breach notification, and privacy standards. Its multiple failures to meet those standards, as described herein, are all the more egregious because HMS touts itself on its website, including as of the filing of this complaint, as HIPAA Compliant.[2]

44.    HIPAA circumscribes security, data privacy responsibilities, and breach-notification obligations designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish standards for electronic transactions and code sets to maintain the privacy and security of protected information.[3]

45.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[4]

46.    Defendants are business associates covered by HIPAA (45 CFR §160.102) and as such are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and the Security Standards for the Protection of Electronic Protected Health Information ("Security Rule"), 45 CFR Part 160 and Part 164, Subparts A and C. They are also required to follow the Breach Notification Rule. 45 CFR Part 160 and Par 164, Subparts A and D.

---

[1] https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf. (last accessed July 25, 2024)
[2] https://hmsnd.com/resources/ (Last accessed July 31, 2024).
[3] HIPAA lists 18 types of information that qualify as PHI according to guidance from the department of Health and Human Services Office for Civil Rights, and includes *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.
[4] *See* 45 CFR §164.306 (security standards and general rules); 45 CFR §164.308 (administrative safeguards); 45 CFR §164.310 (physical safeguards); 45 CFR §164.312 (technical safeguards).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

47.     HIPAA requires Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information."[1] HIPAA requires covered entities' business associates to appropriately safeguard the protected health information they receive or create on behalf of covered entities.[2]

48.     The PII and PHI at issue in this case constitutes "protected health information" within the meaning of HIPAA.

49.     The HIPAA Security Rule "establishes national standards to protect individuals' electronic personal health information that is created, received, used, or maintained by a covered entity" or business associate.[3]

50.     HMS inadequately maintained its network security, platform, and software, rendering these easy prey for cybercriminals.

51.     Upon information and belief, Defendants were on notice that their inadequate data security created a heightened risk of exfiltration, compromise, and theft.

52.     Defendants' security failures include:

(a)     Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 CFR §164.306(a)(1);

(b)     Failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 CFR §164.306(a)(2);

(c)     Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR §164.306(a)(3);

(d)     Failing to ensure compliance with HIPAA security standards by Defendants' workforce in violation of 45 CFR §164.306(a)(4);

---

[1] 45 CFR §164.530(c)(1).
[2] 45 CFR §§164.502(e), 164.504(e), 164.532(d)-(e).
[3] U.S. Dep't of Health & Human Services, The Security Rule, https://www.hhs.gov/hipaa/for-professionals/security/index.html (last accessed June 27, 2024).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

(e)     Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR §164.312(a)(1);

(f)     Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 CFR §164.308(a)(1);

(g)     Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR §164.308(a)(6)(ii); and

(h)     Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 CFR §164.308(a)(5).

53.     Simply put, the Data Breach resulted from Defendants' failures to comply with safeguards mandated by HIPAA regulations compounding upon each other.

54.     As the CMS HIPAA Guidance makes clear, the Defendants are directly responsible for the failures to comply with the safeguards mandated by HIPAA regulations. Indeed, CMS specifically advised their initial investigation showed that Defendants failed in their obligations to CMS.

55.     Defendants failed to use reasonable care in maintaining the privacy and security of Plaintiff's and Class Members' PII and PHI. If Defendants had implemented adequate security measures, cybercriminals could never have accessed the PII and PHI of Plaintiff and Class Members, and the Data Breach would have either been prevented in its entirety or have been much smaller in scope. For example, if Defendants had adequately segregated sensitive data they would not have included Plaintiff's and Class Members bank account and routing numbers in the same data set as their names, addresses, dates of birth, and Social Security numbers. Likewise, a breach of a single system should not have allowed a bad actor to access and subsequently attempt to ransom this kind of sensitive information on hundreds of thousands of individuals. Under normal circumstances no individual should be able to download even a tiny fraction of that information

from the beneficiary database and adequate monitoring should have flagged and stopped the exfiltrated data much earlier.

56.    Personally Identifiable Information is of high value to criminals. Sensitive information can often be sold on the dark web, with personal information being sold at a price ranging from $40 to $200 and bank details with a price from $50 to $200.[1] The Data Breach exposed PII that is both valuable and highly coveted on underground markets because it can be used to commit identity theft and financial fraud. Identity thieves use such PII to, among other things, gain access to bank accounts, social media accounts, and credit cards.  Identity thieves can also use this PII to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government identification cards, or create "synthetic identities." Additionally, identity thieves often wait significant amounts of time—months or even years—to use the PII obtained in data breaches because victims often become less vigilant in monitoring their accounts as time passes, therefore making the PII easier to use without detection. Yet as of March 25, 2024, Defendants have failed even to offer free identity protection services for their patients. Given the extraordinary scale of the breach and the potential for consequences lingering for years. These identity thieves will also re-use stolen PII and PHI, resulting in victims of one data breach suffering the effects of several cybercrimes from one instance of unauthorized access to their PII and PHI.

57.    Victims of data breaches are much more likely to become victims of identity fraud than those who have not. Data Breach victims who do experience identity theft often spend hundreds of hours fixing the damage caused by identity thieves.[2] Plaintiff and members of the class generally have spent hours on end and considerable time and stress in attempting to mitigate the present and future harms caused by the breach. The U.S. Department of Justice's Bureau of Justice

---

[1] *Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/  (last accessed July 25, 2024).

[2] https://www.marylandattorneygeneral.gov/ID%20Theft%20Documents/Identitytheft.pdf. (last accessed July 25, 2024)

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

Statistics has reported that, even if data thieves have not caused financial harm, data breach victims "reported spending an average of about 7 hours clearing up the issues."[1]

58.    The information compromised in the Data Breach—including names, addresses, dates of birth, Social Security numbers, and bank account and routing numbers—is much more valuable than the loss of credit card information in a retailer data breach. There, victims can simply close their credit and debit card accounts and potentially even rely on automatic fraud protection offered by their banks. Here, however, the information compromised is much more difficult, if not impossible, for victims to re-secure after being stolen because it goes to the core of their identity. Moreover, given the heightened vulnerability of the Class, they are at even greater risk of lasting harm and in having difficulties fully responding to the breach. The loss of the highly sensitive data in connection with medical and Medicare data puts Class Members at additional risk for potential medical fraud and medical identity theft.

59.    Data breaches involving medical records are not only incredibly costly, they can "also [be] more difficult to detect, taking almost twice as long as normal identity theft."[2] The FTC warns that a thief may use private medical information to, among other things, "see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care"[3] and that this may have far reaching consequences for a victim's ability to access medical care and use insurance benefits.

60.    Security standards for businesses storing PII and PHI commonly include, but are not limited to:

   a.   Maintaining a secure firewall

   b.   Monitoring for suspicious or unusual traffic on the website

   c.   Looking for trends in user activity including for unknown or suspicious users

   d.   Looking at server requests for PII

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

---

[1] https://bjs.ojp.gov/content/pub/pdf/vit14.pdf. (last accessed July 25, 2024)
[2] *See What to Know About Medical Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-medical-identity-theft (Last Accessed July 25, 2024).
[3] *Id*

e.    Looking for server requests from VPNs and Tor exit notes

f.    Requiring multi-factor authentication before permitting new IP addresses to access user accounts and PII

g.    Structuring a system including design and control to limit user access as necessary including a user's access to the account data and PII of other users.

61.    After the data breach, an HMS spokesperson told reporters "Patient privacy has always been our top priority, and we have steadfastly maintained our obligation to patients and to any agency or contractor with which we have worked."[1] Nevertheless, CMS early in their investigation announced that "initial information indicates HMS acted in violation of its obligations to CMS".

62.    Despite Defendants' repeated statements relating to their purported expertise and the adequacy of their security measures and compliance with state and federal law, the scale of the breach and the sensitivity of the data indicates Defendants did not use security measures commensurate to their obligations. No single individual should have ever been able to access all the breached information.

63.    Defendants breached their duty to exercise reasonable care in protecting Plaintiffs' and Class Members' PII and PHI by failing to implement and maintain adequate data security measures to safeguard Plaintiff's and Class Members' sensitive personal information, failing to encrypt or anonymize PII within their systems and networks, failing to monitor their systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII and PHI no longer necessary for its provision of services to its clients, allowing unmonitored and unrestricted access to unsecured PII and PHI, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiff's and Class Members' confidential and private information. Additionally, Defendants breached their duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, Defendant also violated its duties under the FTC Act and HIPAA.

---

[1] https://www.hipaajournal.com/up-to-254000-medicare-beneficiaries-affected-by-ransomware-attack-on-cms-subcontractor/ (Last Accessed July 25, 2024)

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

64.    Defendants failed to prevent the Data Breach. Had Defendants properly maintained and adequately protected their systems, servers, and networks, the Data Breach would not have occurred.

**V.    Plaintiff's and Class Members' Experiences**

65.    To use Defendants' service and obtain Medicare benefits, Plaintiff and class members provided sensitive PII and PHI including their full name, address, date of birth, social security number, medical records, insurance information, billing, banking, and credit card information, family medical history, and more. Although it is not clear if additional information was breached, at minimum the breached data included, as discussed above, beneficiary full name, address, date of birth, phone number, Social Security number, Medicare beneficiary identifier, banking information (including routing and account numbers), as well as Medicare entitlement, enrollment, and premium information.

66.    Plaintiff has taken reasonable steps to maintain the confidentiality of his PII and PHI and he relied upon Defendants' representations, experience, and sophistication to keep his information secure and confidential.

67.    As a result of the data breach, Plaintiff Scott was forced to take measures to mitigate the harm, including spending time monitoring credit and financial accounts, researching the Data Breach, and researching and taking steps to prevent and mitigate the likelihood of identity theft.

68.    As a result of the Data Breach, Plaintiff Scott has suffered extensive actual injuries and has been repeatedly victimized by identity theft and fraud associated with the breached data as outlined below:

- Received a report from Credit Karma about a fraudulent bank account added under his name with Patelco Credit Union (Report was received on July 8, 2023, but was based on information from days earlier).

- Observed multiple fraudulent "Quick Card" payments associated with the same bank account between July 3, 2023 and July 13, 2023.

- Received notice of a fraudulent short-term loan associated with his personal information on September 4, 2023.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

- Received notice of a fraudulent short-term loan associated with his personal information on October 4, 2023.

- Received notice of a fraudulent short-term loan associated with his personal information on October 5, 2023.

- Received notice of a change to his credit file associated with the fraud on October 7, 2023

- Received notice of a change to his credit file associated with the fraud on October 12, 2023

- Received notice of a change to his credit file associated with the fraud on, November 10, 2023

- Received an additional notice of a fraudulent change to his bank account he did not authorize on November 10, 2023.

- Received notice of a fraudulent short-term loan associated with his personal information on December. 6, 2023

- Received notice of a fraudulent short-term loan associated with his personal information on January 4, 2024

- Received notice of a fraudulent short-term loan associated with his personal information on January 21, 2024

- Received notice of a fraudulent short-term loan associated with his personal information on February 4, 2024

- Received notice of a fraudulent short-term loan associated with his personal information on February 11, 2024

- Received notice of a fraudulent short-term loan associated with his personal information on March 6, 2024

- Received notice of a fraudulent short-term loan associated with his personal information on April 4, 2024

- Received notice of a fraudulent short-term loan associated with his personal information on June 1, 2024

Class Action Complaint                                                                                        19

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

- Received notice of a fraudulent short-term loan associated with his personal information on June 2, 2024
- Received notice of a fraudulent short-term loan associated with his personal information on June 5, 2024
- Received notice of a fraudulent short-term loan associated with his personal information on June 9, 2024
- Received notice of a fraudulent short-term loan associated with his personal information on June 10, 2024
- Received a notice from Experian that his FICO score had decreased on June 12, 2024.

69.     Plaintiff Scott has suffered and continues to suffer severe and ongoing harm as a direct result of the data breach. The information compromised in the breach include his name, address, date of birth, Social Security number, as well as banking information including, but not limited to, his routing and account numbers. This is *precisely* the type of information which would be used to execute the pervasive and sustained fraud and identity theft crimes against Plaintiff Scott.

70.     Moreover, not only has Plaintiff Scott been directly harmed as a victim of identity theft and fraud, but the consequences to him as a result, including decreases to his credit score and reductions in his ability to access and his bank account and take out legitimate loans, constitute a severe and material deleterious impact on his everyday life and opportunities. These harms are the entirely foreseeable consequence of being a victim of pervasive identity theft and fraud caused by the Data Breach.

71.     Plaintiff Scott and Class Members suffered harm which includes but is not limited to: (a) damages to and diminution in the value of his PII and PHI—property that Plaintiff and Class Members entrusted to Defendants as a condition of receiving their services; (b) loss and invasion of Plaintiff's and Class Members' privacy; (c) injuries arising from the increased risk of fraud and identity theft, including the lost time and cost of taking reasonable identity theft protection measures, which will continue for years, and (d) actual injury in fact for Plaintiff Scott and Class Members as discussed in detail above.

Class Action Complaint                                                                                               20

**CLASS ACTION ALLEGATIONS**

72.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(1)-(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Nationwide Class defined as:

**All persons in the United States whose PII/PHI were compromised by the Data Breach and ransomware attack on HMS systems which purportedly occurred on October 8, 2022.**

73.     Within the Nationwide class there is one California Subclass defined as follows:

**All persons in the State of California whose PII and PHI was compromised by the Data Breach and ransomware attack on HMS systems which purportedly occurred on October 8, 2022.**

74.     Excluded from the Nationwide Class and Subclass are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, coconspirators, successors, subsidiaries, and assigns. Also excluded from the Nationwide Class and Subclass are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

75.     This action is brought and may be properly maintained as a class action pursuant to Rule 23. This action satisfies the requirements of Rule 23, including numerosity, commonality, typicality, adequacy, predominance, and superiority.

76.     **Numerosity.** The Nationwide Class and Subclass is so numerous that the individual joinder of all members is impracticable. While the exact number of Nationwide Class and Subclass Members is currently unknown and can only be ascertained through appropriate discovery, Plaintiff, on information and belief, alleges that the Nationwide Class includes at least hundreds of thousands of individuals based on widespread reporting by CMS, Defendants, and other entities, and on information and belief the and Subclass contains at least thousands of individuals..

77.     **Commonality.** Common legal and factual questions exist that predominate over any questions affecting only individual Class Members. These common questions, which do not vary among Class Members and which may be determined without reference to any Class Member's individual circumstances, include, but are not limited to:

a.     Whether Defendants knew or should have known that their systems were vulnerable to unauthorized access;

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

b. Whether Defendants failed to take adequate and reasonable measures to ensure that their data systems were protected;

c. Whether Defendants failed to take available steps to prevent and stop the breach from happening or to mitigate the risk of a long-term breach;

d. Whether Defendants unreasonably delayed in notifying patients of the Data Breach once the suspicious activity was detected.

e. Whether Defendants owed a legal duty to Plaintiff and Class Members to protect their PII and PHI;

f. Whether Defendants breached any duty to protect the personal information of Plaintiff and Class Members by failing to exercise due care in protecting their PII and PHI;

g. Whether Plaintiff and Class Members are entitled to actual, statutory, or other forms of damages and other monetary relief; and,

h. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief or restitution.

78. **Typicality.** Plaintiff's claims are typical of other Nationwide Class and Subclass Members' claims because Plaintiff and Class Members were subjected to the same allegedly unlawful conduct and damaged in the same way.

79. **Adequacy of Representation.** Plaintiff is an adequate class representative because he is a Nationwide Class and Subclass Member, and his interests do not conflict with the Class interests. Plaintiff retained counsel who are competent and experienced in class action and data breach litigation. Plaintiff and his counsel intend to prosecute this action vigorously for the Class's benefit and will fairly and adequately protect their interests.

80. **Predominance and Superiority.** The Nationwide Class and Subclass can be properly maintained because the above common questions of law and fact predominate over any questions affecting individual Class Members. A class action is also superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class member's claim is impracticable. Even if each Class member could afford individual

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

litigation, the court system could not. It would be unduly burdensome if thousands of individual cases proceed. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the courts because it requires individual resolution of common legal and factual questions. By contrast, the class-action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

81.    **Declaratory and Injunctive Relief.** The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class Members and impair their interests. Defendants have acted and/or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate.

### CLAIMS FOR RELIEF

**Count 1**
**Negligence**
**On behalf of Plaintiff and the Nationwide Class**

82.    Plaintiff incorporates by reference and realleges each allegation above as though fully set forth herein.

83.    Plaintiff and Class Members entrusted their PII and PHI with Defendants as a precondition for receiving Medicare services.

84.    Plaintiff and Class Members entrusted their PII and PHI to Defendants with the understanding that Defendants would safeguard their PII and PHI.

85.    Defendants did not take reasonable and appropriate safeguards to protect Plaintiff and Class Members' PII and PHI.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

86.    Defendants had full knowledge of the sensitivity of the PII and PHI that they stored and the types of harm that Plaintiff and Class Members could and would suffer if that PII and PHI were wrongfully disclosed.

87.    Defendants repeatedly indicated they knew they were serving a vulnerable population that depended upon them for critical services, and likewise promised to take measures to implement and maintain reasonable security procedures and practices.

88.    Defendants violated their duty to implement and maintain reasonable security procedures and practices. That duty includes, among other things, designing, maintaining, and testing Defendants' information security controls sufficiently rigorously to ensure that PII and PHI in their possession was adequately secured by, for example, encrypting sensitive personal information, installing effective intrusion detection systems and monitoring mechanisms, using access controls to limit access to sensitive data, regularly testing for security weaknesses and failures, failing to notify patients of the specific breached data in a timely manner, and failing to remedy the continuing harm by unreasonably delaying notifying specific victims who were harmed.

89.    Defendants' duty of care arose from, among other things,

  a.  Defendants' exclusive ability (and Class Members' inability) to ensure that its systems were sufficient to protect against the foreseeable risk that a data breach could occur;

  b.  Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, failing to adopt reasonable data security measures;

  c.  Defendants' duty to comply with HIPAA including by implementing reasonable security practices and practices in compliance with the HIPAA Security Rule.

  d.  Defendants' common law duties to adopt reasonable data security measures to protect patients' PII and PHI and to act as a reasonable and prudent person under the same or similar circumstances would act.

  e.  Defendants' violations of their data security obligations to CMS.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

90.     Defendants' violation of the FTC Act constitutes negligence per se for purposes of establishing the duty and breach elements of Plaintiff's negligence claim. Those statutes were designed to protect a group to which Plaintiff belong and to prevent the types of harm that resulted from the Data Breach.

91.     Defendants had the financial and personnel resources necessary to prevent the Data Breach. Defendant ASRC is a large national family of companies with thousands of employees that operates across at least 44 states. Defendant HMS is likewise a very large organization which advertises it provides services in every US State and Territory. Defendants nevertheless failed to adopt reasonable data security measures, in breach of the duties they owed to Plaintiff and Class Members.

92.     Plaintiff and Class Members were the foreseeable victims of Defendants' inadequate data security. Defendants knew that a breach of their systems could and would cause harm to Plaintiff and Class Members.

93.     Indeed, HMS advertises it offers a "unique blend of healthcare and technology capabilities". Defendants knew or should have known they were an extremely tempting target for attackers given their specialty.

94.     Defendants' conduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendants' conduct included their failure to adequately mitigate harm through negligently failing to inform victims of the breach for more than two months after the purported first discovery of the breach.

95.     Defendants knew or should have known of the inherent risks in collecting and storing massive amounts of PII and PHI, the importance of providing adequate data security for that PII and PHI, and the frequent cyberattacks within the medical industry.

96.     Defendants, through their actions and inactions, breached their duty owed to Plaintiff and Class Members by failing to exercise reasonable care in safeguarding their PII and PHI while it was in their possession and control. Defendants breached their duty by, among other things, their failure to adopt reasonable data security practices and their failure to adopt reasonable security and notification practices, including monitoring internal systems and sending notifications to affected

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

victims. Defendants failed to timely notice Plaintiff and Class Members of suspicious activities and failed to implement sufficiently stringent security measures.

97.    Defendants inadequately safeguarded patients' PII and PHI in breach of standard industry rules, regulations, and best practices at the time of the Data Breach.

98.    But for Defendants' breach of their duty to adequately protect Class Members' PII and PHI, Class Members' PII and PHI would not have been stolen.

99.    There is a temporal and close causal connection between Defendants' failure to implement adequate data security measures and notification practices, the Data Breach, and the harms suffered by Plaintiff and Class Members.

100.    As a result of Defendants' negligence, Plaintiff and Class Members suffered and will continue to suffer the damages alleged herein.

101.    Plaintiff and Class Members are entitled to all forms of monetary compensation set forth herein, including monetary payments to provide adequate identity protection services. Plaintiff and Class Members are also entitled to the injunctive relief sought herein.

**Count 2**
**Breach of Implied Contract**
**On behalf of Plaintiff and the Nationwide Class**

102.    Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them by reference as though set forth in full.

103.    Plaintiff and Class Members entered into an implied contract with Defendants when they entrusted CMS with their PII and PHI as a precondition for receiving Medicare benefits.

104.    As part of these transactions, Defendants agreed to safeguard and protect the PII of Plaintiff and Class Members and to timely and accurately notify them if their PII or PHI was breached or compromised.

105.    Plaintiff and Class Members entered into implied contracts with the reasonable expectation that Defendants' data security practices and policies were reasonable and consistent with legal requirements and industry standards. Plaintiff and Class Members believed that

Defendants would use part of the monies paid to Defendants for Medicare data processing under the implied contracts to fund proper and reasonable data security practices.

106.    Plaintiff and Class Members would not have provided and entrusted their PII and PHI to CMS for Medicare benefits in the absence of the implied contract or implied terms between them and Defendants to safeguard Class Members' personal information. The safeguarding of the PII and PHI of Plaintiff and Class Members was critical to realize the intent of the parties.

107.    Plaintiff and Class members fully performed their obligations under the implied contracts with Defendants.

108.    Defendants breached their implied contracts with Plaintiff and Class Members to protect their PII and PHI when they (1) failed to take reasonable steps to use safe and secure systems to protect that information; (2) disclosed that information to unauthorized third parties and; (3) failed to notify Plaintiff and Class Members of the specific data breached a reasonably timely manner.

109.    As a direct and proximate result of Defendants' breach of implied contract, Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include ongoing, imminent, certainly impending threat of identity theft crimes, medical identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of their PII and PHI; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Defendants' Data Breach; lost benefit of their bargains and overcharges for services or products; loss of access to medical services and treatment; nominal and general damages; and other economic and non-economic harm.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

110.     As a direct and proximate result of the breach, Plaintiff is entitled to relief as set forth herein.

## Count 3
## Breach of Fiduciary Duty
## On behalf of Plaintiff and the Nationwide Class

111.     Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them by reference as though set forth in full.

112.     A relationship existed between Defendants and the class wherein Plaintiff and the Class entrusted Defendants with protecting their PII and PHI. Defendants accepted this trust when they agreed to process the Medicare data for CMS.

113.     When Defendants accepted and became guardians of Class Members' personal information, they undertook a fiduciary responsibility to act in the interests of class members with respect to Class Members' PII and PHI. Defendants agreed to safeguard and protect the PII and PHI of Plaintiff and Class Members and to timely and accurately notify them if their PII or PHI was breached or compromised.

114.     Defendants breached the fiduciary duties that they owed to Plaintiff and the Class by failing to act with the utmost good faith, fairness, and honesty and failing to act with the highest and finest loyalty.

115.     Defendants breached their fiduciary duties by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable period.

116.     Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to implement reasonable data security practices and policies consistent with legal requirements and industry standards including by failing to encrypt or protect the sufficiency of their systems.

117.     Defendants breached their fiduciary duties by failing adequately secure their sensitive data systems, failing to timely notify Plaintiff and the Class about the data breach, and otherwise failing to safeguard Class Members' PII and PHI.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

118.    But for Defendants' breach of fiduciary duties, Plaintiff and class members would not have suffered injured or would have suffered less harm. These injuries include ongoing, imminent, certainly impending threat of identity theft crimes, medical identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of their PII and PHI; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Defendants' Data Breach; lost benefit of their bargains and overcharges for services or products; loss of access to medical services and treatment; nominal and general damages; and other economic and non-economic harm.

119.    As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and Class members suffered and continue to suffer the injuries alleged above and other forms of injuries.

120.    As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages and injunctive relief, to be determined at trial.

**Count 4**
**Invasion of Privacy**
**On behalf of Plaintiff and the Nationwide Class**

121.    Plaintiff, individually and on behalf of the Class, incorporates by references each of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

122.    Plaintiff and Class Members have a legally protected privacy interest in their PII and PHI, which is and was collected, stored, and maintained by Defendant, and they are entitled to

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

the reasonable and adequate protection of their PII and PHI against foreseeable unauthorized access, as occurred with the Data Breach.

123.    Plaintiff and Class Members reasonably expected that Defendants would protect and secure their PII from unauthorized parties and that their private information would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

124.    Defendants unlawfully invaded the privacy rights of Plaintiff and Class Members by engaging in the conduct described above, including by failing to protect their PII and PHI by permitting unauthorized third parties to access, exfiltrate, and view this private information. Likewise, Defendants further invaded the privacy rights of Plaintiff and Class Members, and permitted cybercriminals to invade the privacy rights of Plaintiff and Class Members, by unreasonably delaying disclosure of the Data Breach and failing to properly identify what PII and PHI had been accessed, exfiltrated, and viewed by unauthorized third-parties.

125.    This invasion of privacy resulted from Defendants' failure to properly secure and maintain Plaintiff's and the Members' PII and PHI, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unencrypted data.

126.    Plaintiff's and the Class Members' PII and PHI is the type of sensitive, personal information that one normally expects will be protected from exposure by the entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiff's and the Class Members' PII and PHI, and such private information is otherwise protected from exposure to the public by various statutes, regulations, and other laws.

127.    The disclosure of Plaintiff's and the Class Members' PII and PHI to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

128.    Defendants' willful and reckless conduct which permitted unauthorized access, exfiltration and disclosure of Plaintiff's and the Class Members' sensitive PII and PHI is such that it would cause serious mental injury, shame, embarrassment, or humiliation to people of ordinary sensibilities. Specifically, an individual's financial status and whether or not they are on Medicare or other forms of welfare assistance is sensitive and private protected information.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

129.    The unauthorized access, exfiltration, and disclosure of Plaintiff's and the Class Members' PII and PHI was without their consent, and in violation of various statutes, regulations, and other laws.

130.    As a result of the invasion of privacy caused by Defendants, Plaintiff and the Class Members suffered and will continue to suffer damages and injury as set forth herein.

131.    Plaintiff and the Class Members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that is just and proper.

### Count 5
### California Customer Records Act, Cal. Civ. Code §§ 1798.80 *et seq.*
### On behalf of Plaintiff and the California Subclass Class

132.    Plaintiff, individually and on behalf of the Subclass, incorporates by reference each of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

133.    "[T]o ensure that personal information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

134.    Defendants are business that own, maintain, or license personal information, within the meaning of Cal. Civ. Code § 1798.81.5, about Plaintiff and California Subclass members.

135.    Defendants violated Cal. Civ. Code § 1798.81.5 by failing to implement reasonable measures to protect California Subclass members' PII and PHI.

136.    Businesses that own or license computerized data that includes personal information are required to notify California residents when their PII and PHI has been acquired (or has reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of personal

information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

137.    Defendants are businesses that own or license computerized data that includes personal information as defined by Cal. Civ. Code § 1798.82.

138.    Plaintiff and California Subclass Members' PII and PHI includes personal information identified in Cal. Civ. Code § 1798.82(h) such as their names, Social Security numbers, address and date of birth, and banking and financial account information (including bank account and routing numbers), and is thereby covered by Cal. Civ. Code § 1798.82.

139.    Plaintiff and the California Subclass Members are "customers" within the meaning of Cal. Civ. Code § 1798.80(c), as their personal information was provided to Defendants for the purpose of utilizing Defendants' healthcare technology services or products.

140.    The Data Breach constituted a breach of Defendants' security systems, networks, and servers.

141.    Because Defendants reasonably believed that Plaintiff and California Subclass Members' PII and PHI was acquired by unauthorized persons during the Data Breach, Defendants had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

142.    Defendants unreasonably delayed informing Plaintiff and the California Subclass Members about the breach of security of their PII and PHI after they knew the breach had occurred. Specifically, Defendants knew about the data breach as early as October 8, 2022, but never notified Plaintiff or Subclass Members, who were only informed of the breach more than two months later by CMS.

143.    Upon information and belief, no law enforcement agency instructed Defendants that notification to California Subclass Members would impede an investigation.

144.    Thus, by failing to disclose the Data Breach in a timely and accurate manner, the Defendants also violated Cal. Civ. Code § 1798.82.

145.    Pursuant to Cal. Civ. Code 1798.84, "[a]ny waiver of a provision of this title is contrary to public policy and is void and unenforceable," "[a]ny customer injured by a violation of

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

1    this title may institute a civil action to recover damages," and "[a]ny business that violates,

2    proposed to violate, or has violated this title may be enjoined."

3       146.    As a direct and proximate result of Defendants' violations of Cal. Civ. Code

4    §§ 1798.81.5 and 1798.82, Plaintiff and California Subclass Members were (and continue to be)

5    injured and suffered (and will continue to suffer) damages, as described above.

6       147.    Plaintiff and California Subclass Members seek relief under Cal. Civ. Code

7    § 1798.84, including, but not limited to, actual damages, any applicable statutory damages, and

8    equitable and injunctive relief.

9

10                                    **Count 6**

11   **California Customer Privacy Act of 2018, Cal. Civ. Code §§ 1798.100 *et seq.***
     **On behalf of Plaintiff and the California Subclass Class**

12

13      148.    Plaintiff, individually and on behalf of the Subclass, incorporates by reference each

14   of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

15      149.    The California Consumer Privacy Act of 2018, Cal. Civ. Code §§ 1798.100 *et seq.*

16   ("CCPA"), was enacted to protect individuals' PII from collection and use by businesses without

17   appropriate notice and consent.

18      150.    Through the conduct and actions complained of herein, Defendants violated the

19   CCPA by subjecting Plaintiff and California Subclass Members' nonencrypted PII and PHI to

20   unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violation of its

21   duties to implement and maintain reasonable security procedures and practices appropriate to the

22   nature and protection of that information. Defendants thereby violated Cal. Civ. Code §

23   1798.150(a).

24      151.    As a direct and proximate result of Defendants' acts, Plaintiff and the California

25   Subclass's PII and PHI was subjected to unauthorized access and exfiltration, theft, or disclosure

26   through Defendants' computer networks, servers, and systems.

27      152.    As a direct and proximate result of Defendants' acts, Plaintiff and the California

28   Subclass were injured and lost money or property, including but not limited to the loss of the

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

California Subclass's legally protected interest in the confidentiality and privacy of their PII and PHI, nominal damages, and additional losses as described above including losses due to identity theft and fraud.

153.    Defendants knew or should have known that its computer systems, servers, and networks and data security practices were inadequate to safeguard the California Subclass's PII and PHI and that the risk of a serious data breach or theft was highly likely. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII and PHI of Plaintiff and the California Subclass.

154.    Plaintiff and the California Subclass Members are "consumers" within the meaning of Cal. Civ. Code § 1798.140(i) because they are California residents.

155.    Defendants collected Plaintiff and the California Subclass's "personal information" within the meaning of Cal. Civ. Code §§ 1798.140(v) and 1798.80(e).

156.    Defendants are limited liability partnership organized or operated for the profit or financial benefit of their owners, partners, and other shareholders. Defendants "collected" Plaintiff and the California Subclass's "personal information" within the meaning of Cal. Civ. Code § 1798.140(v). Defendants do business in the State of California and have annual gross revenues exceeding $25 million. Accordingly, both Defendants are a "business" within the meaning of the Cal. Civ. Code § 1798.140(d) and are obligated to comply with the CCPA's requirements.

157.    Pursuant to Cal. Civ. Code § 1798.150(b), counsel for Plaintiff will serve Defendants with notice of these CCPA violations by certified mail, return receipt requested.

158.    On behalf of California Subclass Members, Plaintiff presently seeks actual pecuniary damages and injunctive relief in the form of an order enjoining Defendants from continuing to violate the CCPA. Unless and until Defendants are restrained by order of the Court, their wrongful conduct will continue to cause irreparable injury to Plaintiff and the California Subclass.

159.    If Defendants fail to timely rectify or otherwise cure the CCPA violations described herein, individually and on behalf of the California Subclass, Plaintiff reserves his right to amend

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

1  this Class Action Complaint to seek statutory damages and any other relief the Court deems proper

2  as a result of Defendants' CCPA violations pursuant to Cal. Civ. Code § 1798.150(a).

**Count 7**
**California Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200, *et seq.***
**On behalf of Plaintiff and the California Subclass Class**

5  160.    Plaintiff, individually and on behalf of the Subclass, incorporates by reference each

6  of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

7  161.    Plaintiff pleads this claim for equitable relief, including restitution and injunctive

8  relief, in the alternative to his claims for damages.

9  162.    Defendants violated California's Unfair Competition Law (the "UCL"), CAL. BUS.

10  & PROF. CODE §§ 17200 *et seq.*, by engaging in unlawful, unfair, or fraudulent business acts and

11  practices that constitute acts of "unfair competition" as defined in the UCL with respect to their

12  conduct and actions with towards Plaintiff and the California Subclass.

13  163.    Defendants' actions as alleged herein in this Class Action Complaint constitute an

14  "unlawful" practice as encompassed by CAL. BUS. & PROF. CODE §§ 17200 *et seq.* because

15  Defendants' actions: (a) violated the California Consumer Records Act, CAL. CIV. CODE §§

16  1798.80 *et seq.*, (b) violated the CCPA, CAL. CIV. CODE §§ 1798.100 *et seq.*, (c) constituted

17  negligence; and (d) violated federal law and regulations, including the FTC Act and HIPAA.

18  164.    Defendants' actions as alleged in this Class Action Complaint also constitute an

19  "unfair" practice as encompassed by CAL. BUS. & PROF. CODE §§ 17200 *et seq.*, because they

20  offend established public policy and are immoral, unethical, oppressive, unscrupulous, and

21  substantially injurious. The harm caused by Defendants' wrongful conduct outweighs any utility of

22  such conduct and has caused—and will continue to cause—substantial injury to the California

23  Subclass, including Plaintiff Scott. There were ample reasonably available alternatives that would

24  have furthered Defendants' legitimate business practices, including using industry-standard

25  technologies to protect data (e.g., two-factor authorization, effective encryption and

26  anonymization, compartmentalization of sensitive data, software patches, limiting how much data

27  any user may access, and the purging of data no longer necessary for Defendants' services).

28  Defendants also unreasonably delayed in notifying Plaintiff and the California Subclass Members

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

1   regarding the unauthorized release and disclosure of their PII and PHI. Additionally, Defendants'

2   conduct was "unfair" because it violated the legislatively declared policies reflected by

3   California's strong data-breach and online-privacy laws, including the California Consumer

4   Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, the CCPA, Cal. Civ. Code §§ 1798.100, *et seq.*,

5   and the California constitutional right to privacy, CAL. CONST. ART. 1, § 1.

6   165.   As a result of Defendants' unlawful and unfair conduct, Plaintiff and the California

7   Subclass were damaged and injured by the significant costs of protecting themselves from identity

8   theft and face ongoing and impending damages related to theft of their PII and PHI.

9   166.   Defendants' wrongful practices constitute a continuing course of unfair competition

10  because, on information and belief, Defendants has failed to remedy the lax security practices or

11  even fully notify all affected California persons. Plaintiff and the California Subclass seek

12  equitable relief pursuant to Cal. Bus. & Prof. Code § 17203 to end Defendants' wrongful practices

13  and require Defendants to maintain adequate and reasonable security measures to protect the PII

14  and PHI of Plaintiff and the California Subclass.

15  167.   Plaintiff and California Subclass Members lack an adequate remedy at law because

16  the injuries here include an imminent risk of identity theft and fraud that can never be fully

17  remedied through damages, ongoing identity theft and fraud, as well as long term incalculable risk

18  associated with medical fraud.

19  168.   Further, if an injunction is not issued, Plaintiff and California Subclass Members

20  will suffer irreparable injury. The risk of another such breach is real, immediate, and substantial.

21  Defendants has still not provided adequate information on the cause and scope of the Data Breach.

22  Plaintiff and California Subclass Members lack an adequate remedy at law that will reasonably

23  protect against the risk of a further breach.

24  169.   Plaintiff and the California Subclass also seek an order requiring Defendants to

25  make full restitution of all monies it received through its wrongful conduct, along with all other

26  relief permitted under Cal. Bus. & Prof. Code §§ 17200 *et seq.*

**Count 8**
**Injunctive/Declaratory Relief**
**On behalf of Plaintiff and the Nationwide Class**

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

170.    Plaintiff, individually and on behalf of the Class, incorporates by reference each of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

171.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described herein.

172.    Defendants owes a duty of care to Plaintiff and Class Members, which required Defendants to adequately monitor and safeguard Plaintiff's and Class Members' PII and PHI.

173.    Defendants and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns still possess the PII and PHI belonging to Plaintiff and Class Members.

174.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and PHI and whether Defendants are currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII and PHI. Plaintiff alleges that Defendants' data security measures remain inadequate. Furthermore, Plaintiff and the Class continue to suffer injury as a result of the exposure of their PII and PHI and the risk remains that further compromises of their private information will occur in the future.

175.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.      Defendants owes a legal duty to secure the PII and PHI of Plaintiff and the Class within its care, custody, and control under the common law, Section 5 of FTC Act, and HIPAA;

b.      Defendants breached its duty to Plaintiff and the Class by allowing the Data Breach to occur;

c.      Defendants' existing data monitoring measures do not comply with their obligations and duties of care to provide reasonable security procedures and practices that are

appropriate to protect the PII and PHI of Plaintiff and the Class within Defendants' custody, care, and control; and

       d.    Defendants' ongoing breaches of said duties continue to cause harm to Plaintiff and the Class.

176.    This Court should also issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with industry standards to protect the PII and PHI of Plaintiff and the Class within its custody, care, and control, including the following:

       a.    Order Defendants to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

       b.    Order that, to comply with Defendants' obligations and duties of care, Defendants must implement and maintain reasonable security and monitoring measures, including, but not limited to:

       i.    Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems, networks, and servers on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

       ii.    Encrypting and anonymizing the existing PII and PHI within their servers, networks, and systems to the extent practicable, and purging all such information which is no longer reasonably necessary for Defendants to provide adequate services;

       iii.    Engaging third-party security auditors and internal personnel to run automated security monitoring;

       iv.    Auditing, testing, and training its security personnel regarding any new or modified procedures;

       v.    Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems, networks, and servers;

       vi.    Conducting regular database scanning and security checks; and

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

vii.    Routinely and continually conducting internal training and education to inform Defendants' internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

177.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach or cybersecurity incident. This risk is real, immediate, and substantial. If another data breach or cybersecurity incident occurs, Plaintiff and the Class will not have an adequate remedy at law because monetary relief alone will not compensate Plaintiff and the Class for the serious risks of future harm. Moreover, Plaintiff and the Class are unable to stop using Defendants' services without experiencing undue hardship. Because providing information to Defendants is a precondition for receiving Medicare benefits, Plaintiffs cannot cease providing this information without losing Medicare access. This would be an extreme financial hardship to large portions of the Class.

178.    The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Plaintiff and the Class will likely be subjected to substantial, continued identity theft and other related damages and or additional data breaches and exposure if an injunction is not issued. On the other hand, the cost of Defendants' compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendants has a preexisting legal obligation to employ such measures.

179.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent or larger data breach or cybersecurity incident, thus preventing future injury to Plaintiff and the Class and other persons whose PII and PHI would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of themselves and the Class set forth herein, respectfully request the following relief:

A.    That the Court certify this action as a class action and appoint Plaintiff and their counsel to represent the Class;

B.      That the Court grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein and directing Defendants to adequately safeguard the PII and PHI of Plaintiff and the Class by implementing improved security controls;

C.      That the Court award compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

D.      That the Court award statutory or punitive damages as allowed by law in an amount to be determined at trial;

E.      That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of Defendants' unlawful acts, omissions, and practices;

F.      That the Court award to Plaintiff and Class Members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses; and

G.      That the Court award pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims so triable.


Dated: August 1, 2024                 */s/ Amber L. Schubert*

                                        **SCHUBERT JONCKHEER & KOLBE LLP**
                                        ROBERT C. SCHUBERT (rschubert@sjk.law)
                                        AMBER L. SCHUBERT (aschubert@sjk.law)
                                        DANIEL L.M. PULGRAM (dpulgram@sjk.law)
                                        2001 Union St, Ste 200
                                        San Francisco, CA 94123
                                        Tel: (415) 788-4220
                                        Fax: (415) 788-0161

                                        *Attorneys for Plaintiff and the Proposed Classes*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

Class Action Complaint                                                    40